## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM J. CHAVANU,

       Plaintiff,

vs.                                  CASE NO. 3:11-cv-388-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated October 31, 2011 (Doc. #16). The Commissioner has filed a transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number). For the reasons set out herein, the Commissioner's decision is **REVERSED and the case is REMANDED** for additional proceedings.

### I. Procedural History

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning February 1, 2007 (Tr. 200-02, 210-12). Plaintiff's application was denied initially and upon reconsideration (Tr. 83-84, 85-86). Plaintiff requested an administrative hearing (Tr. 95-96). The first administrative

hearing was held September 15, 2009 (Tr. 68-82).  A second administrative hearing was held on February 16, 2010 (Tr. 33-67).  The administrative law judge ("ALJ") issued a decision denying Plaintiff's application on March 10, 2010 (Tr. 14-26).  Plaintiff filed a request for review, which the Appeals Council denied on March 23, 2011 (Tr. 1-5).  Plaintiff filed the instant action in federal court on April 21, 2011 (Doc. #1).

## II. Summary of the ALJ's Decision

A plaintiff may be entitled to disability benefits under the Social Security Act if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected either to result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.[1]  *See* 20 C.F.R. §§ 404.1520, 416.920[2]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

---

[1] First, if a claimant is engaging in substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from performing his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(g).  A plaintiff bears the burden of persuasion through step four, but the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

[2] Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition.  As the regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

In the instant case, the ALJ found Plaintiff met the Social Security Act's insured status requirements through December 31, 2010 (Tr. 19).  At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 2007, the alleged onset date.  *Id.*  At step two, the ALJ found Plaintiff suffered from the severe impairments of GERD, IBS, sigmoid diverticulosis, migraine headaches, anxiety, and panic attacks.  *Id.*  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b): during a normal 8-hour work day, he can lift/carry 20 pounds occasionally and 10 pounds, frequently; he can sit for up to 6 hours and stand/walk for up to 6 hours; he can frequently climb, balance, stoop, kneel, crouch or crawl; he can occasionally perform overhead reaching functions, bilaterally; he can tolerate occasional exposure to hazards and heights; he is limited to low stress tasks and occasional contact with co-workers and the public.  SSR 96-8p.

(Tr. 20).  Considering this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work as a salvage laborer, petty office, pressure washer, or spray painter (Tr. 24).  At step five, utilizing vocational expert testimony, the ALJ found there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including agricultural products sorter, electronics tube assembler, and hand cell tuber (Tr. 25).  Therefore, the ALJ found Plaintiff was not under a disability since February 1, 2007, the alleged onset date, through the date of his decision (Tr. 26).

### III. Standard of Review

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established . . . and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence that is favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  Although the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence

4

to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding the claimed impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is the plaintiff's burden to provide the relevant medical and other evidence establishing disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## IV. Analysis

Plaintiff raises two arguments on appeal. First, Plaintiff argues the ALJ erred in evaluating the severity of Plaintiff's mental impairments. Second, Plaintiff argues the ALJ erred in evaluating the medical opinion evidence of record. The Court agrees with Plaintiff on both issues. The Court will address Plaintiff's second argument first.

## A. Whether the ALJ erred in evaluating the medical opinion evidence

Plaintiff argues the ALJ failed to properly discount the opinions of his treating physicians, Dr. Mohammad Ayubi and Dr. Janet Hurley, erred in giving "little weight" to the opinion of examining physician Dr. Saudia Major, and erred in giving "greater weight" to the opinions of Dr. Nick DeFilippis.

The ALJ is required to evaluate every medical opinion he receives, regardless of the source. 20 C.F.R. § 404.1527(d). The ALJ is also required to "state with particularity the

weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (citing *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986)).  Pursuant to the regulations, the weight an ALJ must give medical opinions varies according to the relationship between the medical professional and the claimant.  20 C.F.R. § 404.1527(d); SSR 96–6p.  "The opinions of examining physicians are generally given more weight than non-examining physicians; treating physicians receive more weight than nontreating physicians; and specialists on issues within their areas of expertise receive more weight than non-specialists."  *Preston v. Astrue,* No. 2:09–cv–0485–SRW, 2010 WL 2465530, at *6 (M.D.Ala. June 15, 2010)[3] (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  If the treating physician's opinion is not entitled to controlling weight, the case law and the Regulations require the ALJ to give substantial weight to the opinion, unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1527(d).  The Eleventh Circuit has concluded "good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or, (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis*,

---

[3] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

125 F.3d at 1440).  An ALJ must clearly articulate his reasons for electing to disregard the opinion of a treating physician.  *Id.* at 1241.  When a treating physician's opinion does not warrant controlling weight or substantial weight, the ALJ must weigh the opinion based on: (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.  *Sullivan v. Astrue*, No. 3:09-cv-411-J-JBT, 2010 WL 3729811, at *6 (M.D. Fla. Sept. 17, 2010); 20 C.F.R. § 404.1527(d); *see also* SSR 96-2p, 1996 WL 374188 (S.S.A. July 2, 1996) ("Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927.").

In his decision, the ALJ acknowledged Plaintiff's treating psychiatrist Dr. Ayubi submitted a mental RFC assessment that found Plaintiff lacked the mental capacity to perform work.  The ALJ noted this assessment was consistent with the opinion of Plaintiff's treating psychologist, as it was based on the same mental and medical conditions stated by Dr. Hurley.  The ALJ did not specify the weight given to Dr. Ayubi's opinion.  This in itself constitutes reversible error, because the ALJ is required to "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz,* 825 F.2d at 279 (citing *MacGregor,* 786 F.2d at 1053).  The ALJ did, however, explain that Dr.

DeFillipis, a non-examining consulting medical expert present at the administrative hearing, testified there was no evidence of PTSD identified in the record, which "implies that the reports of Drs. [Hurley][4] . . . and Ayubi . . . are not credible" (Tr. 24).  The ALJ also noted Dr. DeFillipis stated Dr. Ayubi's GAF score of 45 was too severe and the basis for his evaluation was faulty, because he and Dr. Hurley were "evaluating for something the claimant did not have."  *Id.*

Other than the fact that Dr. DeFillipis disagreed with Dr. Ayubi's diagnoses and clinical findings, the ALJ did not provide any independent reason for discrediting the detailed opinion of Dr. Ayubi.  It is well-established in this Circuit that the opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician.  *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988); *see also Sharfarz*, 825 F.2d at 279 ("The opinions of nonexamining, reviewing physicians . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence."); *Spencer ex. rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) ("[R]eports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision.").  The Court finds the ALJ failed to provide good cause for giving Dr. Ayubi's opinion less than controlling or substantial weight.

With regard to Dr. Hurley, as indicated above, the ALJ clearly discounted her opinion, at least in part, based on Dr. DeFillipis' testimony.  However, the ALJ provided a somewhat more detailed explanation for giving her opinion "little weight."  The ALJ stated he gave Dr. Hurley's opinion "little weight because her conclusion that [Plaintiff] is unable

---

[4]  The ALJ mistakenly refers to Dr. Hurley as Dr. Herloy in his decision.

to perform at even a sedentary level is inconsistent with her assigned GAF score of 50-53"
(Tr. 23). The ALJ found Dr. Hurley's opinion inconsistent because a GAF score of 50-53
is only "indicative of moderate symptoms." *Id.*

The Court finds, this reason, standing alone, does not establish good cause to give
Dr. Hurley's opinion less than controlling or substantial weight. Dr. Hurley's opinion is not
inherently inconsistent, as the ALJ alleged. Moreover, even if Dr. Hurley's assigned GAF
was inconsistent with her overall findings, a single inconsistent statement does not provide
good cause to reject in its entirety the detailed opinion of a treating physician. *See Hill v.
Astrue*, No. 1:09CV77-SRW, 2010 WL 3724502, at *12 (M.D. Ala. Sept. 14, 2010) (noting
a treating physician's assigned GAF score "would not be sufficient, standing alone, to
discredit his opinion").

In her Mental RFC Questionnaire, Dr. Hurley provided a detailed opinion describing
Plaintiff's signs and symptoms, her clinical findings, and Plaintiff's ability to do work-related
activities. (Tr. 1379-83). Dr. Hurley stated Plaintiff's signs and symptoms included:
anhedonia or pervasive loss of interest in almost all activities; decreased energy; thoughts
of suicide; blunt, flat or inappropriate affect; feelings of guilt of worthlessness; impairment
of impulse control; generalized persistent anxiety; mood disturbance; difficulty thinking or
concentrating; recurrent and intrusive recollection of a traumatic experience, which are a
source of marked distress; psychomotor agitation or retardation; change in personality;
emotional withdrawal or isolation; psychological or behavioral abnormalities associated with
a dysfunction of the brain with a specific organic factor judged to be etiologically related to
the abnormal mental state and loss of previously acquired functional abilities; disorientation
to time and place; motor tension; emotional liability; loosening of associations; easy

9

distractibility; memory impairment; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week (Tr. 1380).  Dr. Hurley found Plaintiff had substantial limitations in his ability to do work-related activities, including his ability to: remember work-like procedures; maintain attention for two hour segments; sustain an ordinary routine without special supervision; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; and deal with normal work stress (Tr. 1381).  Dr. Hurley found Plaintiff had no useful ability to function with regards to his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  *Id.*  Dr. Hurley stated Plaintiff had a low IQ or reduced intellectual functioning, his psychiatric condition exacerbates his experience of pain or other physical symptoms, and his impairments would likely cause him to be absent from work more than four days per month (Tr. 1382-83).  Dr. Hurley explained Plaintiff had "problems with attention and delayed memory, headaches, chronic pain, anxiety and depression and PTSD," and a "documented history" of "traumatic brain injury resulting in cognitive disorder/chronic pain and problems with depression/post-traumatic stress disorder and panic attacks," and found his condition "impacts attention and delayed memory (as well as) chronic pain issues/headaches, etc." (Tr. 1379, 1381-82).  Dr. Hurley stated Plaintiff's "issues prevent him from being able to function effectively in most settings," and "preclude his functioning adequately in any employment setting" (Tr. 1381-82).  Throughout her opinion, Dr. Hurley referred back to her progress notes and the neuropsychological assessment report provided by VA staff psychologist, Dr. Jason Demery (*see* Tr. 1151-56).

10

Dr. Hurley assigned Plaintiff a current GAF of 50 and noted his highest GAF in the past year was 53. The Global Assessment of Functioning Scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF of 41-50 is defined as "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 34 (4th ed., American Psychiatric Assoc. 2000) (hereinafter DSM-IV). A GAF of 51-60 is defined as manifesting "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers)." *Id.*

Without further explanation, it is not clear to the Court why the ALJ considered Dr. Hurley's GAF assessment to be inconsistent with her findings. Moreover, Dr. Hurley's GAF assessment actually indicates moderate to serious symptoms. Thus, the ALJ's characterization of her findings was not entirely accurate. The Court also notes Dr. Hurley's GAF assessment is consistent with the record as a whole, which reflects Plaintiff's complaints of suicidal ideation, including hospitalization for four days due to "worsening depression with suicidal ideation" after he reported he had gone onto the roof of his home with the intention of jumping off (Tr. 977, 1107-12, 1141, 1159, 1239, 1372). The record also reflects Plaintiff's symptoms had taken a toll on his relationship with his wife, children and friends (Tr. 962, 1070, 1107-08, 1157, 1167-68).

Based on the foregoing, the Court finds the ALJ did not provide good cause to give the opinions of Plaintiff's treating physicians less than controlling or substantial weight. The

opinion of a non-examining physician that is contrary to the opinion of a treating physician is entitled to little weight unless the opinion of the treating physician has been properly rejected.  *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  Because the ALJ failed to properly reject the opinions of Plaintiff's treating physicians, he therefore erred in assigning "greater weight" to Dr. DeFillipis, the non-examining physician.

In the instant case, the ALJ turned the hierarchy established in 20 C.F.R. § 404.1527 on its head. Without adequate explanation or specificity, the ALJ gave the greatest weight to the opinion of the non-examining consultant, Dr. DeFillipis, less weight to the opinion of the State's examining psychologist, Dr. Major,[5] and little or no weight to the opinions of Plaintiff's treating physicians, Dr. Ayubi and Dr. Hurley. For the aforementioned reasons,

---

[5] Dr. Major performed a mental consultative examination, which included a clinical interview, mini-mental state examination, and records review (Tr. 901-03). Dr. Major found Plaintiff presented with symptoms "that are consistent with rapidly cycling mood disorder," and noted his symptoms "will likely continue to grow more intense as he ages (which has been the course thus far), with limited hope of reversibility" (Tr. 903). Dr. Major stated Plaintiff's "functional abilities appear greatly limited." *Id.* The ALJ stated he gave little weight to Dr. Major's report because his GAF score of 30 was inconsistent with his evaluation, and noted Dr. DeFillipis testified the GAF of 30 was inconsistent with other reports of record (Tr. 23). As discussed previously, the Court does not find the GAF score to provide a sufficient basis on which to discount Dr. Major's report in favor of Dr. DeFillipis. Moreover, the ALJ found the GAF score to be inconsistent with Dr. Major's evaluation, because a GAF of 30 is "indicative of behavior influenced by delusions and hallucination" and claimant denied any visual or auditory hallucination (Tr. 23).  However, as Plaintiff points out, a GAF score is not appropriate only when an individual is experiencing visual or auditory hallucinations.  A GAF score of 30 indicates "behavior is considerably influenced by delusions or hallucinations OR serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." DSM-IV. In sum, the Court does not find the ALJ provided sufficient reason to discount the examining physician's report in favor of the non-examining physician, particularly in light of the fact that the examining physician's report was consistent with the findings of Plaintiff's treating physicians.

the undersigned finds the ALJ failed to properly evaluate the medical opinions. As such, the ALJ's decision is not supported by substantial evidence.

**B. Whether the ALJ adequately accounted for Plaintiff's mental limitations in the RFC assessment and the hypothetical posed to the VE**

Plaintiff argues the ALJ found he had "marked difficulties in maintaining concentration, persistence or pace," but failed to adequately account for this limitation in his residual functional capacity assessment.

To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique, that is set out at 20 C.F.R. § 404.1520a.  Section 404.1520a(b)(2) provides the ALJ must rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section.  Sub-paragraph (c)(4) requires the degree of limitation in the functional areas of daily living; social functioning; and concentration, persistence or pace be rated using a five point scale of: "None, mild, moderate, marked, and extreme," and  the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "None, one or two, three, four or more."  Section 404.1520a(e)(4) provides in pertinent part that "[a]t the administrative law judge hearing [level] . . . the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The four functional areas summarized by application of the Psychiatric Review Technique are broad categories to assist the ALJ in determining at steps two and three which of the claimant's mental impairments are severe, and then determine the mental

13

functional limitations on the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520a(c); SSR 96-8p, 1996 WL 374184, *4 (S.S.A. Jul. 2, 1996). Determination of the functional limitations is a "highly individualized" and fact specific determination. *Id.* Work related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b). The category of concentration, persistence or pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. While limitations in this category may best be observed in work settings, limitations may also be assessed through clinical examination or psychological testing that evaluates short-term memory and/or the completion of tasks that must be finished within established time limits. *Id.* The category of social functioning refers to the "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." *Id.* In a work setting, social functioning involves interactions with the public, supervisors and co-workers. *Id.*

In accordance with the requirements of 20 C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff's mental impairments caused mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 20).

The RFC is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.45(a). The focus of this

assessment is on the doctors' evaluations of the claimant's condition and the medical consequences thereof.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).   In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments.  *Id.*  In this case, the ALJ ultimately found Plaintiff had the RFC to perform light work, but was limited to "low stress tasks and occasional contact with co-workers and the public" (Tr. 20).

Plaintiff argues these limitations to not adequately account for his "marked difficulties in maintaining concentration, persistence or pace."  The Court agrees.   In order to determine whether "low stress tasks and occasional contact with co-workers and the public" represents a satisfactory restriction on a particular plaintiff's ability to work, the ALJ must make a highly individualized inquiry that complies with the "function by function assessment" addressing the plaintiff's work related mental activities set forth in SSR 96-8p. In this case, the Court is not satisfied the ALJ made the function by function assessment that addresses Plaintiff's ability to perform work related activities.

While the ALJ found Plaintiff limited to "low stress tasks and occasional contact with co-workers and the public," these limitations do not adequately address Plaintiff's *marked* difficulties in concentration, persistence or pace.  A "marked" limitation is one that is "more than moderate but less than extreme" and where "the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. pt. 404, Subpt. P, Appendix 1, § 12.00(C).  While the limitation to "low stress tasks" may speak to Plaintiff's ability to deal with changes in a routine work setting, it does not adequately speak to his ability to understand, carry out and remember simple instructions, or his ability to use appropriate judgment.  *See* 20 C.F.R.

15

§ 404.1521(b).  This is especially true where the ALJ has found Plaintiff to have a limitation that "seriously interferes with [his] ability to function independently, appropriately, effectively, and on a sustained basis."    20 C.F.R. pt. 404, Subpt. P, Appendix 1, § 12.00(C).  In sum, the ALJ the ALJ has not adequately accounted for Plaintiff's marked limitation in maintaining concentration, persistence or pace in his RFC assessment.  *See Williams v. Astrue,* No. 8:11-cv-462-MCR, 2012 WL 1581460, at *6 (M.D. Fla. May 4, 2012) (limiting plaintiff to jobs that are not "high stress" did not account for plaintiff's moderate limitations in maintaining concentration, persistence or pace); *Brunson v. Astrue*, 850 F.Supp.2d 1293, 1304 (M.D. Fla. 2011) (limiting the plaintiff to simple tasks without unusual stress did not address the impact of the plaintiff's moderate limitations in maintaining concentration, persistence or pace on his ability to perform work-related activities).

When, as in this case, the ALJ elects to use a vocational testimony to introduce independent evidence of the existence of work that a claimant could perform, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence.  *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).[6]  "[W]hen the ALJ relies on the testimony of a VE, 'the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE' rather than the RFC simply cited in the ALJ's decision."  *Brunson*, 850

---

[6]The ALJ, however, is not required to include in the hypothetical question the non-severe impairments, or the limitations that were properly rejected as unsupported.  *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004)*; McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Loveless v. Massanari,* 136 F.Supp.2d 1245, 1250-51 (M.D. Ala. 2001).

F.Supp.2d at 1304 (quoting *Corbitt v. Astrue*, No. 3:07-CV-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008)).

In the instant case, at the first hearing, held on September 15, 2009, the ALJ asked one hypothetical: "I want to cut right to the chase on this.  If a person has a marked limitation in maintaining attention and concentration, as well as a marked limitation carrying out short, simple instructions, are there any occupations that exist in the national economy that a person with those limitations could perform?"  (Tr. 80-81).  The VE responded, "No, your Honor.  He would not be able.  That individual would not be able to maintain competitive employment with those limitations."  (Tr. 81).

At the second hearing, held on February 16, 2010, the ALJ asked the VE[7] to assume a person (with the same exertional limitations found in the RFC)[8] who "would be subject to a routine, repetitive task, low stress, occasional contact with the public and occasional contact with co-workers" (Tr. 62).  The VE responded a person with those limitations could perform the jobs of agricultural products sorter, electronics tube assembler, and hand cell tuber (i.e., the jobs identified by the ALJ in his decision) (Tr. 25, 63-64).  The ALJ then asked, "Now, you understood I said this person could do routine, repetitive tasks or simple tasks?" (Tr. 64).  The VE reaffirmed the jobs provided still fit within the hypothetical.  *Id.* Thus, the RFC description contained in the hypothetical posed to the VE included an additional limitation of "routine, repetitive tasks or simple tasks."  The Court finds this

---

[7] The VE present at the second hearing was not the same VE present at the first hearing.

[8] These limitations were: "20 pounds occasionally, 10 pounds frequently, sit six, stand six, frequent climb, balance, stoop, kneel, crouch and crawl; occasional heights, occasional hazards and occasional overhead reach bilaterally" (Tr. 62).

additional limitation still does not adequately account for Plaintiff's marked limitation in maintaining concentration, persistence or pace.

Several circuits have found that restricting the VE's inquiry to simple, routine, or repetitive tasks, or unskilled work does not accounts for a plaintiff's *moderate* deficiencies in concentration, persistence, or pace. *See Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179–81 (11th Cir. 2011) (listing cases); *Richter v. Comm'r of Soc. Sec.,* 379 Fed. Appx. 959, 960–62 (11th Cir. 2010) (limiting hypothetical to unskilled jobs and referencing plaintiff's moderate limitation in the ability to remember, understand, and carry out detailed instructions does not account for deficiencies in concentration, persistence, or pace); *Stewart v. Astrue,* 561 F.3d 679, 684–85 (7th Cir. 2009) (limiting hypothetical to simple, routine tasks does not account for plaintiff's moderate difficulties in maintaining concentration, persistence, and pace); *Ramirez v. Barnhart,* 372 F.3d 546, 554 (3rd Cir. 2004) (limiting hypothetical question to simple, one-to-two step tasks does not account for deficiencies in concentration, persistence, or pace); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir. 1996) (limiting hypothetical to simple jobs does not account for moderate deficiencies in concentration, persistence, or pace).   However, if medical evidence affirmatively demonstrates that a claimant retains the ability to engage in simple, routine or repetitive tasks despite deficiencies in concentration, persistence, or pace, then including such restrictions in the hypothetical sufficiently accounts for the deficiencies. *See Winschel,* 631 F.3d at 1179–81; *Simila v. Astrue,* 573 F.3d 503, 521 (7th Cir. 2009) (hypothetical adequately accounted for deficiencies in concentration, persistence, or pace where it restricted VE's inquiry to unskilled sedentary-level work, and plaintiff's concentration

limitations stemmed completely from chronic back pain that was not aggravated by sedentary work); *Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1174–76 (9th Cir. 2008) (hypothetical adequately accounted for deficiencies of concentration, persistence, or pace where it restricted VE's inquiry to simple, routine, repetitive tasks, and plaintiff's physician testified she could still "carry out simple tasks" despite her slow pace); *Howard v. Massanari,* 255 F.3d 577, 582 (8th Cir. 2001) (hypothetical adequately accounted for deficiencies of concentration, persistence, or pace where it restricted VE's inquiry to simple, routine, repetitive tasks, and psychologist determined plaintiff could perform such tasks without severe restrictions).

In the instant case, the medical evidence does not affirmatively demonstrate that Plaintiff retains the ability to engage in "routine, repetitive, simple, low stress" tasks despite his marked difficulties in maintaining concentration, persistence or pace. In fact, Plaintiff's treating physicians found Plaintiff's mental impairments seriously impaired or precluded him from doing these types of tasks.[9] In his Mental RFC Questionnaire, Dr. Ayubi found Plaintiff was "unable to meet competitive standards" (defined as: "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting")[10] with regards to the ability to: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention for two hour segments; sustain an ordinary routine

---

[9] As discussed previously, the ALJ erred in discrediting the opinions of Plaintiff's treating physicians.

[10] Thus, this definition is comparative to that of a marked limitation. *See* 20 C.F.R. pt. 404, Subpt. P, Appendix 1, § 12.00(C) (A "marked" limitation is one where "the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis.").

without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; and deal with normal work stress (Tr. 1386).  In her Mental RFC Questionnaire, Dr. Hurley found Plaintiff's ability to understand and remember very short and simple instructions was "limited but satisfactory" (Tr. 1381).  Dr. Hurley found Plaintiff was "seriously limited, but not precluded" in his ability to carry out very short and simple instructions.  *Id.*  Like Dr. Ayubi, she found Plaintiff was "unable to meet competitive standards" with regards to his ability to: remember work-like procedures; maintain attention for two hour segments; sustain an ordinary routine without special supervision; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; and deal with normal work stress.  *Id.* Dr. Hurley found Plaintiff had not useful ability to function with regards to his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  *Id.*  The examining state psychologist also found Plaintiff's functional abilities to be "greatly limited" (Tr. 903).

Accordingly, the Court finds the ALJ's hypothetical did not adequately account for Plaintiff's marked limitation in maintaining concentration, persistence or pace.  Because the ALJ relied on the VE's response to a hypothetical that did not adequately encompass all of the claimant's impairments, his finding is not supported by substantial evidence.[11]

---

[11] The ALJ asked a second hypothetical of the VE at the second administrative hearing.  The ALJ offered: "The second hypothetical is the same 20, 10, six, six, frequent postural, occasional heights and hazards, occasional overhead reach bilaterally, but this
(continued...)

## V. Conclusion

For the foregoing reasons, the undersigned finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards.  Accordingly, the decision of the Commissioner is hereby **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g).   The case is **REMANDED** for additional proceedings consistent with this Order and Opinion.  On remand, the Commissioner shall: (1) shall reopen the record and accept any additional evidence deemed appropriate; (2) weigh the medical opinion evidence in accordance with applicable law; (3) reassess Plaintiff's residual functional capacity in light of this Order and Opinion; (3) pose a hypothetical question to the VE that specifically accounts for Plaintiff's mental limitations; and (5) conduct any other proceedings deemed appropriate.  The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.[12]

---

[11](...continued)
person would have marked limitations in maintaining attention and concentration and marked limitations in performing simple tasks." (Tr. 62).  The VE responded there were no occupations that a person with those limitations could perform (Tr. 64-65).

[12] If Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the Commissioner's final decision to award benefits.  *See Bergen v. Comm'r Soc. Sec.*, 454 F.3d 1273, 1278 n.2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added).  This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of September, 2012.


THOMAS E. MORRIS
United States Magistrate Judge


Copies to: All counsel of record